KUHN, J.
| aThis appeal is taken by plaintiff-appellant, John Carter, Jr., from a March 5, 2013 judgment of the trial court granting summary judgment in favor of defendant-appellee, Hi Nabor Supermarket LLC, dismissing Carter’s claims, with prejudice. In conjunction with his appeal of that final judgment, Carter also challenges the trial court’s September 12, 2012 interlocutory judgment denying his “Motion for Adverse Inference on Spoliation” of evidence. For the following reasons, we affirm the denial of the motion for adverse inference, reverse the summary judgment in favor of Hi Nabor dismissing Carter’s claims, and remand to the trial court for further proceedings.
FACTS AND PROCEDURAL HISTORY
The record reflects that on April 27, 2010, Carter and his brother-in-law, Malcolm Spillers, were walking in Hi Nabor towards the deli area to purchase a plate lunch when Carter slipped and fell on a substance on the floor.[1] The fall was recorded on Hi Nabor’s videotape surveillance system, which shows clear, color video of the exact area where Carter fell, as well as a small, dark object on the floor in front of the deli area where Carter slipped. After falling, Carter was assisted up off of the floor by Spillers and another man. Carter later testified in a deposition that *701 at the time he slipped, he was looking at Spillers, that he did not notice anything on the floor, and that he initially thought he may have slipped in some type of liquid or water. However, Spillers stated in his deposition that Carter slipped on a grape, explaining that he saw the grape on the bottom of Carter’s shoe and also saw where Carter smeared the grape on the floor when he stepped on it.
| sAffcer the fall, Carter told a cashier that he had slipped and fallen in the back of the store. After returning to his home, Carter also called the manager, Velta Walker, to report the incident, telling her that he slipped on a liquid.
Shortly after the accident, Carter’s original attorney sent, by certified mail, a letter to Hi Nabor dated May 19, 2010, advising Hi Nabor that Carter was represented by counsel “in any and all matters concerning a slip and fall which occurred at [the] store on April 27, 2010.” Thereafter, on March 7, 2011, Carter filed a suit for damages against Hi Nabor and its insurer, Liberty Mutual, alleging liability in that the failure to properly maintain the premises created a defect that constituted an unreasonably dangerous condition.
During the course of discovery, Carter eventually learned that portions of the videotape recording of the day of the accident, particularly those portions prior to Carter’s fall, had been destroyed.[2] As a result, on April 11, 2012, Carter filed a “Motion for Adverse Inference on Spoliation,” requesting that the trial court enter an adverse evidentiary inference instructing the jury that Hi Nabor had destroyed videotape evidence of the scene of his accident and that had this evidence been maintained, it would have been unfavorable to the defendant. Specifically, Carter requested that the trial court “enter an adverse inference instructing the jury that had Hi Nabor not destroyed videotape evidence of the scene of Plaintiff’s accident, the videotape would have shown that the foreign object, the grape, was on the grocery store floor for such a time period that the defendant would have discovered it by the exercise of ordinary care.”
14Carter also filed a motion for partial summary judgment on the issue of liability, contending that Hi Nabor was “liable for the accident ... as a direct result of its failure to keep its premises free of any hazardous conditions.”
Both motions were heard by the trial court on August 20, 2012, after which the trial court denied both the motion for adverse inference and the motion for partial summary judgment. In denying Carter’s motion for partial summary judgment on liability, the trial court found that without an adverse evidentiary inference, there were genuine issues of material fact, especially as to the issue of actual or constructive notice, which precluded summary judgment in Carter’s favor. A written judgment in accordance with these rulings was signed by the trial court on September 12, 2012.[3]
*702 Thereafter, Hi Nabor filed a motion for summary judgment, seeking dismissal of Carter’s case on the basis that, since Carter could not provide any evidence as to how the foreign object came to be on the floor or for how long it had been there, he would be unable to prove a necessary element of his case, i.e., that Hi Nabor possessed actual or constructive notice of its presence. After a hearing on February 19, 2013, during which the trial court noted that this court had denied the writ application taken from the trial court’s denial of plaintiffs motion on spoliation, the trial court granted Hi Nabor’s motion for summary judgment and dismissed Carter’s case, with prejudice. The trial court signed written judgment so providing on March 5, 2013.
Carter now appeals the March 5, 2013 judgment of the trial court granting Hi Nabor’s motion for summary judgment and dismissing Carter’s claims, with | r,prejudice. He also challenges the September 12, 2012 judgment of the trial court, denying his motion for an adverse inference due to spoliation.[4]
DISCUSSION

Rule to Show Cause

A rule to show cause order was issued by this court ex proprio motu concerning the appealability of the September 12, 2012 judgment of the trial court. After briefing of the issue by the parties, the matter was referred to the merits of this appeal by a different panel of this court. Thus, as a preliminary matter, we will address whether the September 12, 2012 judgment is properly before us for review on appeal.
A judgment that does not determine the merits, but only determines preliminary matters in the course of the action, is an interlocutory judgment, which is appealable only when expressly provided by law. La. C.C.P. arts. 1841 & 2083(C). However, when, as in this case, an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments rendered in the same case, in addition to the review of the final judgment. Welch v. East Baton Rouge Parish Metropolitan Council, 10-1531 (La.App. 1st Cir.3/25/11), 64 So.3d 244, 247 n. 2.
The September 12, 2012 judgment of the trial court denying both Carter’s motion for .an adverse evidentiary inference and his motion for partial summary judgment is an interlocutory judgment that does not determine the merits, but only addresses preliminary matters in the course of this action or is otherwise not a final judgment subject to review on appeal. La. C.C.P. art. 1841; Starkey v. Livingston Parish Council, 12-1787 (La.App. 1st Cir.8/6/13), 122 So.3d 570, 573 n. 1. However, because the March 5, 2013 judgment granting Hi Nabor’s | (¡motion for summary judgment and dismissing Carter’s case, with prejudice, is a final judgment properly before us on appeal, Carter is entitled to seek review of all interlocutory rulings rendered against him in this case.[5] Ac *703 cordingly, the rule to show cause is recalled and the appeal is maintained as to the judgment of September 12, 2012.

Spoliation of the Evidence

On appeal, Carter contends the trial court abused its discretion in denying his motion for an adverse inference and jury instruction against Hi Nabor in view of Hi Nabor’s inadequate explanation for the destruction of the portion of the videotape showing the condition of the supermarket’s floor preceding Carter’s fall. In particular, Carter contends that, despite having knowledge of his slip and fall on a foreign object located on the floor, and despite specifically reviewing the videotape with knowledge of the pending claim, Hi Nabor unilaterally decided to limit how much of the videotape it would retain. He maintains that Hi Nabor’s intentional purging of the videotape of the critical time period preceding his fall ultimately caused him to suffer irreparable injury.
Spoliation of the evidence is an evidentiary doctrine that refers to an intentional destruction of evidence for the purpose of depriving the opposing parties of its use in pending or anticipated litigation. BancorpSouth Bank v. Kleinpeter Trace, L.L.C., 13-1396 (La.App. 1st Cir. 10/1/14), 155 So.3d 614; Clavier v. Our Lady of the Lake Hospital Inc., 12-0560 (La.App. 1st Cir. 12/28/12), 112 So.3d 881, 885, writ denied, 13-0264 (La.3/15/13), 109 So.3d 384. The duty to preserve evidence arises from the foreseeability of the need for the evidence in the future. Clavier, 112 So.3d at 885. While it has roots in the common law, the evi-dentiary doctrine of spoliation of the evidence has been recognized in Louisiana since at least 1847.[6] See New Orleans Draining Company v. De Lizardi, 2 La.Ann. 281, p. 6 (La.1847). In an early case in which corporate managers refused to produce corporate records to interested stockholders, the Louisiana Supreme Court held that the manager’s refusal justified a court and jury to draw “the most unfavorable inference, consistent with reason and probability, as to the nature and effect of the evidence which the opposite party has been precluded from using and examining as a means for the discovery of the truth.” Varnado v. Banner Cotton Oil Co., 126 La. 590, 590-92, 52 So. 777, 777-79 (1910).
A trial court has the authority to impose sanctions on a party for spoliation of evidence and other discovery misconduct under both its inherent power to manage its own affairs and the discovery articles provided in the Louisiana Code of Civil Procedure. Under La. C.C.P. art. 1471, when a party refuses or is unable to comply with a discovery order, the trial court in a pending action “may make such *704 orders in regard to the failure as are just,” thereby granting the trial court broad discretion to impose, a range of sanctions. La. C.C.P. art. 1471(A); see also Fed. R.Civ.P. 37. Even without a discovery order, La. C.C.P. art. 191 authorizes trial courts to impose sanctions for spoliation of the evidence, since the destruction of evidence clearly interferes with the court’s ability to fairly administer justice. Specifically, La. C.C.P. art. 1 «191 provides that a trial court “possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law.”
The issue of spoliation of the evidence can be raised in the trial court through different procedural means. For instance, a party can file a rule for discovery sanctions under La. C.C.P. art. 1471 based on the destruction of evidence sought in discovery. Alternatively, a party can file a motion in limine seeking various sanctions on the party responsible for the destruction or inaccessibility of the evidence.
Once a trial court finds that a party had failed to produce evidence within his control, one possible sanction the trial court may impose is an instruction to the jury that it may infer that the evidence was detrimental to that party. . This adverse inference is not applicable, however, when the party gives an adequate explanation for the failure to produce the evidence. See BancorpSouth Bank, 13-1396 at p. 21, 155 So.3d at 647; Randolph v. General Motors Corporation, 93-1983 (La.App. 1st Cir.11/10/94), 646 So.2d 1019, 1026-27, writ denied, 95-0194 (La.3/17/95), 651 So.2d 276.
Further, although an adverse inference jury instruction is a common sanction imposed, it is merely one of the possible sanctions that a trial court may impose when evidence has been destroyed or rendered unavailable by a party. “Under the federal and state rules of civil procedure that regulate discovery procedures, courts have broad discretion to impose a variety of sanctions against a party that fails to produce evidence in violation of the discovery rules.” [Footnote omitted.] Margaret M. Koesel & Tracey L. Turnbull, Spoliation of Evidence 61 (Daniel F. Gourash ed., 3d ed.2013). The purpose of such sanctions is to achieve eviden-tiary balance, fairness, and justice, as well as to deter improper conduct. While different sanctions may be appropriate under the facts of a given case, “courts agree that [a .court] should |flimpose the least severe sanction necessary to remedy prejudice to the non-spoliating party.” [Footnote omitted.] Spoliation of Evidence at 60. Any sanction to be imposed by the trial court should be tailored to the particular facts existing in the case. Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 268 (2d Cir.1999), cert. denied, 528 U.S. 1119, 120 S.Ct. 940, 145 L.Ed.2d 818 (2000); Gordon v. DreamWorks Animation SKG, Inc., 935 F.Supp.2d 306, 315 (D.Mass.2013).
The range of possible sanctions include dismissing a case, rendering a default judgment, striking pleadings, striking a claim or defense, and excluding evidence. See La. C.C.P. art. 1471; Spoliation of Evidence at 61 & n. 5. A determination as to what sanction is appropriate in a particular case is a matter within the province of the trial court, depending upon the facts present. As with other evidentiary and discovery rulings, the trial court has much discretion in deciding which sanction, if any, to impose. Cf. Hutchinson v. Westport Insurance Corporation, 04-1592 (La.11/8/04), 886 So.2d 438, 440 (per curiam); also see Adkins v. Wolever, 554 F.3d 650, 653 (6th Cir.2009). The appellate standard of review for a trial court’s *705 evidentiary ruling on this issue is whether the trial court abused its broad discretion. See BancorpSouth Bank, 13-1396 at p. 22, 155 So.3d at 641; Paradise v. Al Copeland Investments, Inc., 09-0315 (La.App. 1st Cir.9/14/09), 22 So.3d 1018; Everhardt v. Louisiana Department of Transportation and Development, 07-0981 (La.App. 4th Cir. 2/20/08), 978 So.2d 1036, 1045.
In the instant case, since a Hi Nabor employee witnessed the accident, Hi Na-bor had immediate notice of Carter’s fall when it occurred on April 27, 2010. Further, Carter told a cashier about his fall as he was checking out and, when he returned home, he telephoned Hi Nabor and reported the accident to a store manager. Hi Nabor also received the previously mentioned certified letter from |inCarter’s attorney, which advised Hi Nabor that Carter had retained counsel to represent him in all matters concerning his April 27, 2010 slip and fall
Jim Crisasi, Hi Nabor’s corporate representative, testified in his deposition that after receiving notice of the accident, he reviewed the videotape footage of Carter’s fall recorded by the supermarket’s videotape surveillance system. However, he only retained on a CD the portion of the videotape that showed Carter approach the deli section and then slip and fall. According to Crisasi, Hi Nabor generally only retained videotape footage from the time period that an incident occurred. He explained that he did not retain the footage of the deli area in the time period preceding Carter’s fall because Carter reportedly had slipped on water and Crisasi did not believe that water would be visible on the videotape. Crisasi further explained that the supermarket’s surveillance system automatically purges recorded footage, which is overwritten after thirty days, as storage space is limited. He indicated that the additional footage recorded on the day of Carter’s accident was purged by the system sometime after thirty days had elapsed from the accident.
In denying Carter’s motion for an adverse inference and jury instruction, the trial court gave the following oral reasons for judgment:
In this case, spoliation, whether negligent or intentional, is the application of a drastic remedy and that is either an exclusion of evidence or an adverse presumption. In this case, the adverse presumption is being sought. Spoliation will not lie where an adequate explanation is provided. In this case, certainly, the court finds an adequate explanation for not preserving as much of the video as plaintiff would have hoped, because at the time of the writeoff — write-over on the tape ... they did not have any knowledge that there was a claim that there was a grape there, as opposed to water. They had no knowledge of a lawsuit pending or an indication that one would be filed. Lawyers send letters saying, “can you help me with meds,” without saying, “I’m going to file a lawsuit,” all the time. So given the circumstances under which this occurred, they preserved as much of it as they thought that they needed to preserve, based upon the knowledge that they had at the time; and therefore, I’m going to deny the motion for an adverse inference on spoliation.
InBased on our review, we find no abuse of discretion in the trial court’s ruling accepting Hi Nabor’s explanation for the destruction of the evidence as reasonable. Accordingly, the portion of the trial court’s September 12, 2012 judgment that denied Carter’s motion for adverse inference is affirmed.
Additionally, we observe that although we have reviewed this interlocutory judgment in conjunction with the appeal of the *706 final judgment dismissing Carter’s claims on summary judgment, the ruling remains an interlocutory judgment. Consequently, it is possible that the trial court may issue rulings inconsistent with the September 12, 2012 judgment as this litigation proceeds and additional relevant facts may be revealed.

Summary Judgment

Carter contends that the trial court erred in granting Hi Nabor’s motion for summary judgment and dismissing his claim, with prejudice. We agree, finding that genuine issues of material fact exist that preclude summary judgment.
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. In re Succession of Holbrook, 13-1181 (La.1/28/14), 144 So.3d 845, 847. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); In re Succession of Holbrook, 144 So.3d at 847-48.
Carter argues that Hi Nabor had constructive notice of the foreign object on the floor. Although the time period need not be specific in minutes or hours, constructive notice to a merchant of a hazardous condition can be established only where the claimant proves that the condition existed for some period of Intime prior to the fall. Additionally, whether or not the period of time in question is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question. White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081, 1084-85.[7]
In this case, store manager, Velta Walker, testified in her deposition that Hi Na-bor’s policy was to perform a “floor sweep” inspection every thirty minutes. Moreover, her review of the inspection log sheet for the day of Carter’s fall reflected that a floor inspection was conducted at 6:00 p.m. and another at 6:30 p.m. Because the videotape of Carter’s fall reflects that it occurred at 6:32 p.m., she indicated it was possible that the inspection had begun on the other side of the store, but had not yet reached the area where Carter fell. On the other hand, Regina Chiszle, who worked in the Hi Nabor deli department, testified that it had been “about an hour” before the fall since she had last seen Kedron Franklin, the employee responsible for performing the floor inspections, near the area where Carter fell. During this period of time, however, Chiszle was waiting on customers at the meat counter and may have not seen Franklin even if he did pass through the area inspecting the floor.
Clearly, genuine issues of material fact existed as to: (1) the period of time that the foreign substance was on the floor preceding Carter’s fall; (2) the period of time elapsed since the last floor inspection in the area of Carter’s fall; and (3) whether the relevant periods of time (whatever the factfinder determines them to be) were sufficiently lengthy to constitute constructive notice to Hi Nabor of the hazardous *707 condition. These factual issues cannot be resolved [^without weighing the evidence and making credibility determinations, which are matters for the factfinder. In view of these unresolved issues of material fact, the trial court erred in granting summary judgment in favor of Hi Nabor, and the summary judgment must be reversed. La. C.C.P. art. 966(B).
CONCLUSION
For the reasons assigned, the record in this appeal is hereby supplemented with the appellate record filed in 2013-CA-0530. The portion of the September 12, 2012 judgment of the trial court that denied Carter’s motion for an adverse inference based on spoliation of the evidence is hereby affirmed. The March 5, 2013 judgment of the trial court, granting Hi Na-bor’s motion for summary judgment and dismissing Carter’s claims, with prejudice, is hereby reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion. The costs of this appeal are assessed one-half to plaintiff-appellant, John Carter, Jr., and one-half to defendants-appellees, Hi Nabor Supermarket, LLC and Liberty Mutual Group, Inc.
RULE TO SHOW CAUSE RECALLED; RECORD SUPPLEMENTED WITH APPELLATE RECORD IN DOCKET NUMBER 2013-CA-0530; SEPTEMBER 12, 2012 JUDGMENT AFFIRMED IN PART; MARCH 5, 2013 JUDGMENT REVERSED; AND REMANDED.
CRAIN, J. concurs in part and dissents in part and assigns reasons.
McDONALD, J. dissents in part and agrees in part with reasons.
WHIPPLE, C.J. concurring in part and dissenting in part and assigns reasons.
WELCH, J. concurs in part and dissents in part for reasons assigned by C.J. WHIPPLE.

. At the time of the fall, Carter, who was employed by Capital Area Transit as a bus driver, was wearing his work uniform and work boots with rubber soles. Carter testified that due to injuries he sustained in the fall, he was unable to return to work as a bus driver and was receiving disability benefits.

. The portion of the video surveillance maintained by Hi Nabor and introduced in the record contains thirty-two seconds of footage of Carter’s slip and fall, including only the time immediately before, during, and after his fall.

. Carter initially filed a writ application with this court seeking review of the trial court’s denial of his motion for adverse inference due to spoliation. By a plurality decision, the writ application was denied when this court declined to exercise supervisory jurisdiction, noting that the criteria for the exercise of supervisory jurisdiction set forth in Herlitz Construction Company v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981) had not been met and that relator had an adequate remedy by review on appeal after a final judgment on the merits. See John Car *702 ter, Jr. v. Hi Nabor Supermarket, LLC, 12-1536 (La.App. 1st Cir. 10/30/12).

. Although Carter generally states in his appellate brief that he also seeks review of the denial of his motion for partial summary judgment on liability, he did not specifically assign this ruling as error and did not brief the issue. Accordingly, we will not address that interlocutory ruling herein. See Uniform Rules — Courts of Appeal, Rule 2-12.4(3)(4).

. Although Carter filed only one motion and order for appeal, seeking review of both the final judgment on the merits dismissing his claim on Hi Nabor's motion for summary judgment and the earlier interlocutory ruling denying his request for an adverse inference jury instruction based on spoliation, for rea *703 sons that are not clear, this matter was erroneously docketed as two separate appeals. Because neither of the two appellate records is complete, in that they do not each contain all transcripts, evidence, and judgments, in the interest of justice and for purposes of judicial economy, we hereby supplement the record in the instant appeal with the appellate record filed in Docket Number 2013CA0530, which appeal is being dismissed by another panel of this court as duplicative. See generally Larrieu v. Terrebonne Parish Sales and Use Tax, 03-0934 (La.App. 1st Cir.2/23/04), 872 So.2d 1164, 1166 (on rehearing); Shuford v. Employers' Liability Assurance Corporation, 141 So.2d 850, 852 (La.App. 2d Cir.1962).

. The imposition of an adverse inference as a sanction for spoliation of the evidence is a sanction that has existed at common law as far back as 1722. New Orleans Draining Company v. De Lizardi, 2 La.Ann. 281, p. 6 (La.1847), citing Armory v. Delamirie, [93 Eng. Rep. 664 (K.B. 1722) ]. See also Herbert v. Wal-Mart Stores, Inc., 911 F.2d 1044, 1046 n. 4 (5th Cir. 1990) (per curiam ).

. Although the Supreme Court in White interpreted the version of La. R.S. 9:2900.6 prior to its amendment by 1996 La. Acts, 1st Ex. Sess., No. 8 § 1, eff. May 1, 1996, the requirement in the statute that the plaintiff prove that the condition existed for "such a period of time” was not changed by the 1996 amendments. Thus, the analysis in White regarding the temporal element of La. R.S. 9:2800.6 is equally applicable to the instant case. See Williams v. Shoney's, Inc., 99-0607 (La.App. 1st Cir.3/31/00), 764 So.2d 1021, 1024 n. 3.